United States District Court
Southern District of Texas
**ENTERED**
February 08, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHAWN GILL, et al., Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:20-CV-528 |
| CONCORD EMS, INC. and GENEVA TRANSPORT, INC., | § § § | |
| Defendant. | | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] are Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 74), Defendants' Motion to Strike and Objections to Plaintiffs' Summary Judgment Evidence (Dkt. No. 79), and Defendants' Motion for Final Summary Judgment. (Dkt No. 80.) Based on a thorough review of the motions, arguments, and relevant law, the Court **RECOMMENDS** Defendants' Motion to Strike and Objections to Plaintiffs' Summary Judgment Evidence be **GRANTED** and both motions for summary judgment be **DENIED**.

**I.     BACKGROUND**

This is a collective action filed under the Fair Labor Standards Act ("FLSA") to recover unpaid overtime wages. (Dkt. No. 39 at 1.) 29 U.S.C. §201. Defendant Concord EMS ("Concord") and Defendant Geneva Transport ("Geneva") provide transportation to individuals in Houston.

---

[1] This case was referred to the Undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. (See Dkt. No. 29.)

(Dkt. No. 39 at 1; Dkt. No. 43 at 5.) Both Concord and Geneva are owned by Gloria Broussard. (Dkt. No. 43 at 5.) Broussard served as the incorporator/organizer, was the initial director, and presides as president for both companies. (Dkt. No. 74 at 4; Dkt. No. 74-1 at 20–25, 61.) She also signs both companies' paychecks. (Dkt. No. 82 at 7.)

Plaintiffs are current and former employees of Geneva. Five plaintiffs are former Geneva drivers: Shawn Gill from 2015 to February 2020; Simon Guzman from June 2019 to November 2019; Malik Luster from January 2019 to March 2020; Devon Leith from September 2019 to early 2020; and Michael Steven Pickel from September 2017 to late 2018. (Dkt. No. 39 at 3; Dkt. No. 40 at 8–14.) One plaintiff is a current Geneva driver: Burnell R. Bell from October 2018 to present. (Dkt. No. 39 at 4; Dkt. No. 40 at 8.)

Plaintiffs filed suit on February 14, 2020. (Dkt. No. 1.) In their fourth amended complaint, Plaintiffs alleged that Defendants' pay practices constitute a willful violation of the FLSA's overtime requirements. (Dkt. No. 39 at 11–12.) Geneva's employees are paid biweekly and may work up to 80 hours over the course of two weeks, however the breakdown of hours between the weeks is where Plaintiffs' claim rests. (*Id.* at 7.) While the hours presumably break down into 40 hours per week, Plaintiffs explain that they would occasionally work more than 40 hours in a single week.[2] Plaintiffs allege that they were not paid time-and-a-half for those additional hours. (Dkt. No. 39 at 2.)

According to Plaintiffs, if they worked more than 40 hours during one week of their pay schedule, their hours would be limited in the other week or they would be instructed to work "off

---

[2] Under 29 U.S.C. §207(a)(1), an employee should be compensated one and one-half times their regular rate for a workweek longer than 40 hours.

the clock." (*Id.* at 9.) This kept their total hours worked at the end of the two-week period to approximately 80 hours. (*Id.*) Plaintiffs allege that Defendants developed this pay practice to hide if an employee worked over 40 hours per week to avoid paying overtime compensation. Plaintiffs assert that Concord employees are subject to the same pay practice. (*Id.* at 8–9.) Plaintiffs further allege that Defendants are both an integrated enterprise and joint employers. (*Id.* at 5.) Plaintiffs admit that Geneva's gross income does not amount to the $500,000 threshold necessary to bring suit under the FLSA, but if Defendants are joint employers or a single enterprise they together exceed this amount. (*Id.* at 6; Dkt. No. 74 at 6.)

Until March 2020, Concord and Geneva operated out of the same location. (Dkt. No. 74 at 9; Dkt. No. 80 at 7.) Defendants also share a 1-800 line. (Dkt. No. 74 at 5; Dkt. No 80 at 7.) Concord has an additional direct number, while Geneva appears to solely use the 1-800 number. (Dkt. No. 74-1 at 92–93; Dkt. No. 80 at 7.) Plaintiffs assert that during the relevant period Concord and Geneva shared a website. (Dkt. No. 74 at 9.) Plaintiffs claim that in an "attempt to distinguish the businesses" after the lawsuit was filed, Geneva tried to make its own separate site. (Dkt. No. 74 at 9.) In support of this allegation, Plaintiffs attached a screenshot of the webpage "genevatransport.com," which briefly describes Geneva and promises that the "new site" is coming soon. (Dkt. 74-1 at 93.) Defendants dispute the credibility of this claim that they shared a website, citing to the currently separate webpages. (Dkt. No 80 at 15.) Defendants, however, admit that Concord issued some replacement checks for Geneva employees. (*Id.* at 18.) In interrogatories, Concord stated that the two companies "have separate EIN numbers, bank accounts, insurance, payroll, uniforms, time clocks, tablets, and vehicles, as well as file separate tax returns." (Dkt. No. 74-1 at 61.)

Concord employs licensed paramedics and emergency medical technicians ("EMTs") to provide medical ambulance services for customers that require medical care. (Dkt. No. 44 at 14.) Geneva provides "unskilled wheelchair van delivery services" and employs drivers to transport customers from their homes or care facilities to medical appointments. (*Id.* at 14–15.) Unlike Concord drivers, Geneva drivers are not required to have any kind of special licensing or qualifications.

Plaintiffs assert that Gill, Pickel, and Luster "were hired by Concord and interchanged with Geneva." (Dkt. No. 82 at 5.) Defendants refute that there is any evidence of this claim, only admitting to a "one-time transfer" of Gill from Concord to Geneva. (Dkt. No. 86 at 6.) Gill testified that he was hired by Concord in 2015 as a medical transport driver. (Dkt. No. 74-1 at 27.) He explained that in 2018 he became a supervisor and transferred over to Geneva. (*Id.* at 28.) He attested that he continued to be a driver after he was transferred, which Geneva confirmed in interrogatories. (*Id.* at 28, 80.) Gill was not a licensed EMT. (*Id.* at 46.) Defendant Pickel testified that he was hired by Concord, wore a Concord uniform and drove a Concord van during his employment. (*Id.* at 37–38.) He further claimed that during the last six weeks of his work Concord transferred him over to Geneva. (*Id.* at 38.) Similarly, Defendant Luster testified he was hired by Shamia Harper to work for Concord and that he drove a Concord van and wore a Concord uniform. (*Id.* at 34.) Luster also alleged that during his employment the company was referred to as either "Concord/Geneva" or "Geneva/Concord." (*Id.*)

The parties disagree as to the amount of management authority Broussard asserted. Plaintiffs' motion for summary judgment asserts that Broussard was involved in the operation of both companies and that she directed Gill getting a promotion. (*Id.* at 14–15.) Defendants contend that the two companies were managed by their respective employees. (Dkt. No. 80 at 16–17.)

The parties agreed to a conditional class of Geneva employees but disagreed as to whether Concord should be included in the class. This Court ruled that Concord employees should not be included in the class. (Dkt. No. 47.) Plaintiffs moved for partial summary judgment, asking the Court to hold that the companies constitute a single enterprise. (Dkt. No. 74.) Defendants filed a Motion to Strike and Objections to Plaintiffs' Summary Judgment Evidence, to which Plaintiffs have not responded, objecting to evidence purporting to show that Concord and Geneva shared insurance because Concord's vehicles were allegedly listed on Geneva insurance cards. (Dkt. No. 79.) Defendants also filed their own motion for summary judgment, asking the Court to find that they were neither a joint employer nor a unified enterprise. (Dkt. No. 80.) The Court recommends the motion to strike and objections be granted and both motions for summary judgment be denied because there are genuine disputes as to material fact on both the single enterprise and joint employer issues.

## II.  LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Rule 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. McCollister*, 671 F. Supp. 2d 884, 887 (S.D. Tex. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the initial burden of identifying the basis for the motion and pointing to materials in the record that demonstrate the absence of a genuine dispute of material fact. *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action

for which he bears the burden of proof. *Celotex Corp.*, 477 U.S. at 322–23; *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). If the movant satisfies the initial burden, the burden shifts to the nonmovant to produce evidence of a genuine factual dispute; he cannot merely rely on the pleadings. *Coastal Agric. Supply, Inc.*, 759 F.3d at 505.

In reviewing a motion for summary judgment, the court may not weigh the evidence or make any credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). However, the court must make reasonable factual inferences in favor of the nonmoving party without accepting "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden. *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Baird v. Shagdarsuren*, No. 17-CV-2000, 2020 WL 208815, at *3 (N.D. Tex. Jan. 14, 2020) ("[The nonmoving party's] burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.") (quotations omitted). If the movant satisfies his burden and the nonmovant does not, the court must grant summary judgment. *Baird*, 2020 WL 208815, at *3 (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994)).

## III. MOTION TO STRIKE AND OBJECTIONS TO INSURANCE EVIDENCE

In their Motion to Strike and Objections to Plaintiffs' Summary Judgment Evidence, Defendants object to Plaintiffs' Exhibit F. (Dkt. No. 79.) Through this Exhibit, Plaintiffs purport to show that Concord is named on insurance cards that exist for Geneva's vans. (Dkt. No. 74 at 8–9; Dkt. No. 74-1 at 86–90.) Defendants contend this exhibit is unauthenticated, hearsay, and does not contain evidence showing the vehicles listed on the insurance cards in the images did indeed belong to Geneva. (Dkt. No. 79 at 2.) Along the same lines, Defendants move to strike Plaintiffs'

statements that "Defendant Concord is named on the insurance cards for Defendant Geneva's vans" as conclusory and unsupported by the evidence. (*Id.*)

Evidence must be authenticated under Federal Rule of Evidence 901. Plaintiffs have failed to submit an affidavit or otherwise provide evidence indicating Exhibit F is what they purport it to be or that the vans in the alleged insurance cards belonged to Geneva. Plaintiffs also fail to explain why this evidence is not hearsay or why it should fall under a hearsay exception. Further, Plaintiffs did not respond to this motion. Under Rule 7.4 of this Court's local rules, by not responding Plaintiffs admit to "no opposition." *Pinder v. Skero*, 375 F. Supp. 3d 725, 734 (S.D. Tex. 2019). Thus, this Court recommends Defendants' Motion to Strike and Objections to Plaintiffs' Summary Judgment Evidence be granted.

## IV. SINGLE ENTERPRISE

"The Fair Labor Standards Act of 1938 (FLSA) provides a comprehensive scheme that seeks to eliminate labor conditions that are 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and [the] general well-being of workers.'" *Mateo v. TA HSIN, INC.*, No. 7:19-CV-419, 2021 WL 3931915, at *2 (S.D. Tex. Feb. 10, 2021) (citing 29 U.S.C. § 202). An employee bears the burden of proving he qualifies for the FLSA's protections. *Warren-Bradshaw Drilling Co. v. Hall*, 317 U.S. 88, 90 (1942). "Under the FLSA, an employer must pay overtime compensation to its non-exempt employees who work more than 40 hours a week." *Avila v. SLSCO, Ltd.*, No. 3:18-CV-00426, 2022 WL 784062, at *11 (S.D. Tex. Mar. 15, 2022), *report and recommendation adopted*, No. 3:18-CV-00426, 2022 WL 980273 (Mar. 31, 2022) (citing 29 U.S.C. § 207(a)(1)). "The minimum wage and overtime provisions of the Fair Labor Standards Act apply to employees of 'an enterprise engaged in commerce or in the production of goods for commerce,' 29 U.S.C. §§ 206, 207, which 'enterprise' is statutorily

defined, inter alia, as requiring an annual gross volume of business done as not less than [$500,000]³, 29 U.S.C. § 203(s)(1)." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 969 (5th Cir. 1984)

In this case, Plaintiffs contend they qualify for enterprise coverage. (Dkt. No. 74 at 6.) Geneva does not qualify as an entity on its own as it does not meet the $500,000 FLSA threshold for gross revenue. (*Id.* at 6.) Plaintiffs allege that Geneva and Concord function as a single enterprise, and therefore meet the $500,000 requirement. (*Id.*) "To establish that two entities functioned as a single enterprise, [a plaintiff] must demonstrate that the entities: (1) engaged in related activities; (2) were a unified operation or under common control; and (3) shared a common business purpose." *Reich v. Bay, Inc.*, 23 F.3d 110, 114 (5th Cir. 1994).

### A. Related Activities

"Two entities' activities are 'related' if they are (1) 'the same or similar'; (2) 'auxiliary and service activities' (e.g., "central office and warehousing activities and bookkeeping, auditing, purchasing, advertising, and other services"); or (3) 'part of a vertical structure' (e.g., 'manufacturing, warehousing, and retailing of a particular product[s]')." *Brock v. Cruz*, 357 F. Supp. 3d 581, 587 (S.D. Tex. 2019) (citing *Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1366 (5th Cir. 1973) (emphasis omitted) (quoting S. REP. NO. 87-145, at 1660 (1961)). Plaintiffs contend that Defendants activities were auxiliary. (Dkt. No. 74 at 12.)

As evidence of this, Plaintiffs point to the shared website and phone number and claim that Defendants interchanged dispatchers through the 1-800 number. (*Id.* at 12–13.) Defendants refute the factual basis of these arguments, contending evidence shows separate websites and that calls

---

³ 29 U.S.C. § 203 was since amended, and the threshold is now $500,000.

are merely transferred to the appropriate company through this number. (Dkt. No. 77 at 6.) If Defendants indeed shared a website, it "raises the specter" that they engaged in related activities. *Howard v. John Moore, L.P.*, No. CIV.A. H-13-1672, 2014 WL 5090626, at *2 (S.D. Tex. Oct. 9, 2014).

Plaintiffs also argue more broadly that Defendants acted interdependently as transportation companies, even interchanging employees, as discussed above. (Dkt No. 74 at 13; Dkt. No. 82 at 3–6.) Defendants argue that the very nature of the two businesses makes this claim implausible. Defendants explain that Concord provides licensed paramedic services while Geneva provides wheelchair transportation and that their employees "do not overlap because of certification and other state requirements." (Dkt. No. 77 at 8; Dkt. No. 80 at 14.)

Even aside from Pickel and Luster's affidavits describing their work for both companies, Gill, who was not an EMT, provided an affidavit saying he drove for both companies. These three affidavits contradict Defendants' contention that employees cannot overlap due to certification requirements. There are numerous controversies concerning related activities including the existence of a shared website, how the 1-800 line functioned, and the interchangeability of employees. Thus, Plaintiffs have demonstrated genuine disputes of material fact as to this first element.

### B. Unified Operation/Common Control

"With respect to the second enterprise element, a plaintiff need only prove 'one of the two alternative requirements': 'unified operation' or 'common control.'" *Brock*, 357 F. Supp. 3d at 587 (quoting *Dunlop v. Ashy*, 555 F.2d 1228, 1231 (5th Cir. 1977)). Unified operations "means combining, uniting, or organizing their performance so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a

common business purpose." *Ashy*, 555 F.2d at 1232. "The term 'unified operation' thus includes a business which may consist of separate segments but which is conducted or operated as a unit or as a single business for a common business purpose." 29 C.F.R. § 779.217.

"'Common control' includes the sharing of control and it is not limited to sole control or complete control by one person or corporation, and 'exists where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together.'" *Reich*, 23 F.3d at 114–15. "However, the test of common control is not ownership, but rather whether there is a common control center with the ultimate power to make binding policy decisions for all units of the enterprise." *Ashy*, 555 F.2d at 1231. The court in *Grim Hotel* found that relevant questions to ask include: "How centralized is the making of significant corporate decisions? Did a single source create and fund the corporations or businesses in issue or were they created and funded by separate interests? How interdependent are those corporations or businesses in actual operation? Are they held out to the public singly or collectively?" *Grim Hotel*, 747 F.2d at 970.

As to this second element, Plaintiffs make the same shared website, phone number, and location arguments, but also point to Broussard's involvement with the companies. (Dkt. No. 74 at 13–15.) Defendants argue that Broussard owning both companies is insufficient evidence, as both companies are managed by separate employees with no involvement with each other. (Dkt. No. 77 at 8–9; Dkt. No. 80 at 16–17.) However, the extent of Broussard's association leaves a question of whether common control exists. Not only did Broussard form both companies, but she also initially made herself the sole initial director and serves as president of both. Plaintiffs also claim and Defendants do not dispute that Broussard signed paychecks for both companies. (Dkt. No. 82 at 7.) "Put simply, where a 'top man' exists as the 'apex' of an corporate conglomerate,

common control often exists. *Shapon v. S&Y Enters., Inc.*, No. CV H-07-4107, 2009 WL 10719069, at *3 (S.D. Tex. Oct. 8, 2009); *see also Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982) (finding common control where ultimate authority, even if latent and only occasionally exercised, vested in one person).

The extent of Shamia Harper's involvement also raises questions as to common control. Plaintiffs assert that Harper held a formal position of authority at Geneva, yet Concord also utilized her for tasks such as terminating Gill. (Dkt. No. 85 at 18–19.) In interrogatories, Geneva denied that Harper was its HR representative, stating that in actuality she was an independent contractor for Broussard. (Dkt. No. 85-5 at 19.) However, Geneva admits that Harper promoted Gill when he worked for Concord. Further, Plaintiffs provided Gill's termination letter which showed that Harper fired him. (Dkt. No. 82-1 at 2.) Most compellingly of all, Harper also issued a correction letter, which explained that she accidentally wrote the termination letter on Concord letterhead when it should have been on Geneva letterhead as Gill ended his tenure as a Geneva employee. (*Id.* at 3.) In this correction letter, Harper, described her role as "Human Resources of Concord & Geneva Transport." (*Id.*) While the extent of Harper's role at the companies may be under debate, it is undisputed that she worked for Broussard and carried out some hiring and firing decisions. *See Shapon*, 2009 WL 10719069, at *3 (finding an individual employer holding hiring and firing power evidence of common control). Therefore, there are significant questions as to common control regarding Broussard's and Harper's involvement at the companies. Thus, the evidence demonstrates there are factual disputes regarding this second element.

### C. Common Business Purpose

"A common business purpose exists if 'the separate corporations engaged in complementary businesses, and were to a significant degree operationally interdependent.'" *Reich*,

23 F.3d at 115–16 (quoting *Janitorial Servs.*, 672 F.2d 528, 530 (5th Cir.1982)). "More than a common goal to make a profit, however, must be shown to satisfy the requirement." *Brennan*, 482 F.2d at 1367.

Plaintiffs again point to facts in contention such as a shared website, single phone number, interchangeable employees, and Concord providing insurance for Geneva vans for the last element. (Dkt. No. 74 at 16.) Plaintiffs also discuss the instances where Concord paid Geneva's payroll, Broussard founding both companies, and both companies existing to provide transportation. (*Id.*) Defendants, in turn, highlight separate records, filing, payroll, management, employees, website, vehicles, uniforms, equipment, and insurance. (Dkt. No. 77 at 10; Dkt. No. 80 at 18.) Both parties raise compelling and unresolved facts in support of their contentions, accordingly, there is a genuine issue of material fact as to whether the third element is met. "Because the court finds a genuine issue of material fact exists as to each of the three elements required to impose enterprise liability, summary judgment is not appropriate." *Shapon*, 2009 WL 10719069, at *5.

## V.  JOINT EMPLOYER

"The joint employment doctrine 'treats a worker's employment by joint employers as 'one employment' for purposes of determining compliance with the FLSA's wage and hour requirements.'"[4] *Seong Song v. JFE Franchising, Inc.*, 394 F. Supp. 3d 748, 754 (S.D. Tex. 2019)

---

[4] While often confused, the single enterprise and joint employer doctrines are distinct. *Garza v. Deep Down, Inc.*, No. CIV.A. H-14-3184, 2015 WL 5883408, at *2 n.1 (S.D. Tex. Oct. 8, 2015). A single enterprise exists where two nominally separate companies are in actuality a single employer. *Murdock v. City of Houston*, No. 4:10-CV-00056, 2011 WL 7109286, at *4 (S.D. Tex. Sept. 21, 2011). In contrast, "finding that companies are 'joint employers' assumes in the first instance that companies are 'what they appear to be' independent legal entities that have merely 'historically chosen to handle jointly . . . important aspects of their employer-employee relationship.'" *Id.* at 5 (quoting *NLRB v. Checker Cab Co.*, 367 F.2d 692, 698 (6th Cir.1966)). A finding that one doctrine is applicable necessarily means that the other is not. *See Joaquin v. Coliseum Inc.*, No. A-15-CV-787-LY, 2016 WL 3906820, at *7 (W.D. Tex. July 13, 2016), *report*

(quoting *Salinas v. Com. Interiors*, Inc., 848 F.3d 125, 134 (4th Cir. 2017)). Therefore, showing that Geneva and Concord function as joint employers is an alternative method for Plaintiffs to show the companies meet the $500,000 FLSA threshold. Both parties agree that Courts use the factors in *Lone Star Steel* in making this determination.[5] (Dkt. No. 80 at 9–10; Dkt. No. 85 at 9.) This test holds:

> In considering whether a person or corporation is an 'employer' or 'joint employer', the total employment situation should be considered with particular regard to the following questions: (1) Whether or not the employment takes place on the premises of the company?; (2) How much control does the company exert over the employees?; (3) Does the company have the power to fire, hire, or modify the employment condition of the employees?; employment condition of the employees?; (4) Do the employees perform a 'specialty job' within the production line?; and (5) May the employee refuse to work for the company or work for others?

*Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669–70 (5th Cir. 1968).

### A. Joint Employer Analysis

Defendants have not shown that they are entitled to summary judgment on the issue of joint employment, because there are genuine disputes of material fact. There is a genuine dispute as to how much of the employment took place at the shared location. Plaintiffs claim that they "performed much of their work" at the shared office space and "were directed to meet for work"

---

*and recommendation approved sub nom. Joaquin v. Hinojosa*, No. A-15-CV-787-LY, 2016 WL 7647630 (Aug. 2, 2016) ("In a 'joint employer' relationship, there is no single integrated enterprise. Put another way, a conclusion that employers are 'joint' assumes that they are separate legal entities."); *see also Popat v. Levy*, 253 F. Supp. 3d 527, 539 (W.D.N.Y. 2017) (finding that because the doctrines are distinct, a finding of two organizations being a single entity means that they could not also be joint employers).

[5] Defendants acknowledge that the tests set out in *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) and *U.S. v. Silk*, 331 U.S. 704, 715 (1947) can also help inform a court's decision, but that the *Lone Star Steel* test is controlling. (Dkt. No. 80 at 9–10.) Thus, Plaintiffs' argument that Defendants solely relied on the *Gray* test is meritless. (Dkt. No. 85 at 15.)

there. (Dkt. No. 85 at 12.) Alternatively, Defendants argue that Plaintiffs conducted "Uber-like" jobs so their actual employment did not take place in the office location. (Dkt. No. 86 at 3.) *See Fuller v. Jumpstar Enters.*, LLC, No. H-20-1027, 2021 WL 1429521, at *4 (S.D. Tex. Mar. 26, 2021) (finding genuine issue of material fact as to how much of employment took place on company premises where plaintiffs were delivery drivers and the amount of time spent on the premises was indeterminate).

There are also material factual disputes over how much control Concord exercised over employees, its power to fire, hire, or modify employment conditions, and whether or not Plaintiffs could refuse to work for the company or work for others. [6] As explained above, Defendants ardently contest the role that Harper played handling human resources decisions at one or both companies and whether Broussard served as merely an owner or was actually involved in the management of both companies. Likewise, the parties also debate whether or not Plaintiffs Gill, Luster, and Pickel were "interchangeably transferred" between the companies. Therefore, there is a genuine dispute of material fact as to whether Geneva and Concord are joint employers. Thus, this Court recommends that summary judgment on this issue should be denied.

### B. Ripeness

---

[6] The Court does not find the fourth factor, performing a specialty job on a production line, relevant in this case. This factor was derived in a case where the Supreme Court found meat boners to be specialty workers in slaughterhouse. *Artis v. Asberry*, No. CIV.A. G-10-323, 2012 WL 5031196, at *6 n.6 (S.D. Tex. Oct. 16, 2012) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729–30, (1947)). "[T]his Court agrees that Plaintiffs performed a crucial task for . . . Defendants, but is '[hesitant] to say that their role was "analogous to employees working at a particular position on a larger production line"' given that Plaintiffs' work was performed apart from . . . Defendants' facilities or supervision." *Id.* (finding this factor irrelevant in a case where Plaintiffs were nonemergency medical transport drivers).

Plaintiffs also argue that Defendants' Motion for Final Summary Judgment should be denied in regard to the joint employee issue because it is not ripe for decision as there has not been discovery on the joint employer issue. (Dkt. No. 85 at 11.) Plaintiffs contend this on the basis that the class certification phase has not officially closed and there has not been a ruling on Plaintiffs' request for potential Plaintiffs' phone numbers. (*Id.*) However, the Court agrees with Defendants that Plaintiffs did not raise the issue of ripeness in their opposition to Defendants' motion (Dkt. Nos. 69, 70), which was a request for permission to file a motion for summary judgment on the issue of joint employment. (Dkt. No. 86 at 1.) Regardless, since the Court recommends that both motions on this issue be denied, the issue of ripeness is moot.

## VI.   CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Defendants' Motion to Strike and Objections to Plaintiffs' Summary Judgment Evidence (Dkt. No. 79) be **GRANTED**, Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 74) be **DENIED**, and Defendant's Motion for Final Summary Judgment (Dkt. No. 80) be **DENIED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections or responses shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on February 8, 2023.

_____
Sam S. Sheldon
United States Magistrate Judge